DELIA A. CANFIELD ET AL. V. R. M. MOORE ET AL.

Delivered June 12, 1897.

1. **Husband and Wife—Mortgage of Separate Property—Status of Proceeds.**

A fund procured by giving a mortgage on land purchased in the name of a married woman, and partly paid for with her separate property, the balance being secured by a mortgage executed by her husband, is community property.

2. **Subrogation—Mortgage of Separate Property—Payment With Community Funds.**

Payment out of community funds of a mortgage on the wife's separate property, executed to secure the husband's debts, does not entitle her to be subrogated to the rights of the mortgagee.

3. **Mortgage—Satisfaction—Subsequent Transfer.**

Payment from community property of the amount of a husband's debt, secured by a mortgage on real estate and also by a chattel mortgage, discharges and cancels all the incidents of the debt, including the chattel mortgage, and a subsequent transfer of such mortgage to the wife passes no title.

4. **Levy and Sale of Mortgaged Property—Rights of Mortgagee Holding Additional Security.**

A levy and sale of personal property covered by a chattel mortgage gives no cause of action to the mortgagee, where he has real estate security exceeding in value the amount of the debt, although the chattel mortgage was taken for the purpose of obtaining additional security.

APPEAL from Wichita. Tried below before Hon. GEORGE E. MILLER.

*Carrigan & Montgomery*, for appellants.—1. Where a married woman mortgages her separate property to secure a debt of her husband, her property thus mortgaged will be treated in all respects as a surety, and whatever facts would entitle a surety to be subrogated to the rights of the debtor would entitle such married woman to be so subrogated. Wofford v. Unger, 55 Texas, 483; Hall v. Dodson, 55 Texas, 520; Jones on Mort., secs. 114, 115; Darrell v. Farwell, 88 Texas, 98.

2. When a married woman's property is mortgaged to secure the debt of her husband; and the mortgagee has additional security from the husband, and the debt is paid or satisfied by the wife, she is subrogated to all the rights of the mortgagee in the additional security given by the husband, and may take any steps to secure the same or its value that the original mortgagee might. Sheldon on Subrogation, sec. 104, and authorities cited; 24 Am. and Eng. Encyc. of Law, p. 228, and authorities under preceding proposition.

*Robert E. Huff*, for appellees.—1. The separate estate of a married woman must be acquired by gift, devise, or descent, or in exchange for property thus acquired, and money borrowed upon the security of even the separate estate of a married woman is not itself separate estate, but is community property, and confers no right of action upon the wife. Heidenheimer v. McKeen, 63 Texas, 229, and authorities cited.

2. The mortgage company being secured upon the land as well as

the crop, should look first to the land for payment, as one creditor having security upon two funds and another creditor only on one, will be required first to exhaust the fund upon which he alone has a right. Aldridge v. Cooper, 8 Ves., 308; 2 White & T. Lead. Cas. in Eq., 228; Story's Eq. Jur., 633.

TARLTON, CHIEF JUSTICE.—The facts of this case, stated most favorably to the appellants, are substantially and briefly as follows:

A tract of 1316 acres of land out of the Louis Lapoleon survey in Wichita County stood in the name of Mrs. Delia A. Canfield, the wife of H. T. Canfield, by conveyances to her separate right, use, and benefit. It was the intention of the husband and wife in thus taking the deeds that the property should become the separate property of Mrs. Canfield. The consideration for the purchase of the land, to the extent of about $5000 in cash and property, was of her separate means. To the extent of the remainder, or about $5200, the purchase money was procured by a mortgage of the entire tract executed to the Western Securities Company by H. T. Canfield and his wife, in February, 1890.

This mortgage, securing the joint note of H. T. Canfield and his wife, was in the sum of $6500, but as contended by appellants and thus treated by us in disposing of this appeal, the sum of $1300 was used by H. T. Canfield for his own purposes. This mortgage matured in January, 1895. Before its maturity, on July 17, 1894, H. T. Canfield executed to the Western Securities Company a chattel mortgage upon the entire wheat and oat crop grown upon the tract of land in question. At the date of the mortgage the oats and wheat had been cut, but were not threshed. They were admittedly of the community property of H. T. Canfield and his wife. The mortgage company never took possession of the grain.

At that date G. B. Magruder was a judgment creditor of H. T. Canfield in the sum of $981.70, besides costs. Magruder caused the issuance of an execution by virtue of his judgment, and a levy and sale, through R. M. Moore, the sheriff of Wichita County, upon the wheat and oats, which he bought at execution sale for the sum of $1077.89, the reasonable value of the grain.

The chattel mortgage purported to be executed to secure the Western Securities Company in the payment of the note of $6500 and interest, executed by D. A. and H. T. Canfield in 1890, amounting at the date of the chattel mortgage to $7085. The land already mortgaged for the purpose of securing the debt was of the value of $10,520. H. T. Canfield was insolvent and had been for several years, having failed in business in the State whence he came to Texas. His purpose in executing this chattel mortgage was to hinder or delay G. B. Magruder in the collection of his judgment, or, as he testifies, "the mortgage was given to keep Magruder or any other creditor off the crop, because I would not be able to pay the interest on the mortgage when due if the crop was levied on." The company did not accept the mortgage with knowledge of Canfield's purpose, but took it as additional security.

When the debt to the Western Securities Company matured, in January, 1895, Mrs. Delia A. Canfield and H. T. Canfield, failing to pay it, demanded that the mortgagee company should file suit against R. M. Moore, the sheriff, and against G. B. Magruder, the creditor, for converting the grain. The mortgage company refused to institute such a suit, but threatened to foreclose, whereupon, in January, 1895, H. T. and Delia A. Canfield negotiated a loan in the sum of $7000 with the W. C. Belcher Mortgage Company, the debt being payable five years thereafter, and drawing interest at 10 per cent, payable annually. The debt, evidenced by the obligation of the husband and wife, was secured by a mortgage upon the land in question.

With the proceeds of this loan Canfield and his wife paid off the debt to the Western Securities Company, and thereafter, about November, 1896, in accordance with an agreement had at the time the debt matured with the Western Securities Company, the latter transferred to Mrs. Delia A. Canfield, without recourse, all its rights in and to the chattel mortgage. Thereafter, on November 19, 1896, the appellant Delia A. Canfield, joined by her husband, brought this suit against R. M. Moore, the sheriff of Wichita County, for a conversion of the wheat and oats above mentioned, and consequent damages in the sum of $2000. Moore interpleaded Magruder, the creditor, and certain sureties on his indemnity bond. The trial resulted in a verdict and judgment for the defendants.

The appellants invoke in favor of Mrs. Delia A. Canfield the doctrine of subrogation, contending that her separate property having been mortgaged to secure the debt of her husband, stood towards the latter in the relation of a surety (Wofford v. Unger, 55 Texas, 483); and that Mrs. Canfield having paid or satisfied the indebtedness of the husband, should be held to be subrogated to the rights of the Western Securities Company, the mortgagee, in the chattel mortgage which it had received as additional security for the debt due by the husband.

We regard the contention of the appellants as fallacious, in that it assumes, in effect, that the debt due by the husband to the Western Securities Company was paid or satisfied by Mrs. Delia A. Canfield in her own separate capacity, or out of her separate property. Unless the debt was thus paid or satisfied, the doctrine of subrogation could not be invoked by the wife, because this doctrine does not obtain unless the debt of one should be paid or satisfied by another—a proposition which is elementary, and which we do not understand to be controverted by learned counsel for appellants.

If the debt in this instance was paid or satisfied out of the community funds belonging to H. T. Canfield and Delia A. Canfield, it will not, we apprehend, be claimed that it was paid by the wife. Now, as we understand the law in this State, when the debt to the Western Securities Company was paid out of the $7000 realized from the subsequent mortgage to the W. C. Belcher Mortgage Company, this payment was made out of the community property of H. T. Canfield and his wife, and not out of the separate property of the latter. The fund obtained by this mort-

gage was not acquired by the wife by gift, devise, or descent, or by the exchange of property thus acquired. This fund was in every sense community property. Heidenheimer v. McKeen, 63 Texas, 229.

When the debt to the Western Securities Company was paid out of this fund, all of its incidents, including the chattel mortgage, were discharged and canceled. The subsequent transfer by the company to Mrs. Canfield passed nothing, for there was nothing to be transferred. Besides, if the payment was sufficient in character to justify subrogation, it could not apply in this instance, because the mortgagee company under which Mrs. Canfield claims was of itself without cause of action against the appellees on account of the sale of the grain. The company was a mortgagee out of possession at the date of the levy and sale. It was not thereby injured, for the real estate security exceeded in value the amount of its debt. Unless damaged, it had no cause of action, and could transfer none to Mrs. Canfield.

The grain levied upon and sold was properly held subject to the debt due to Magruder, which the husband, by means of the chattel mortgage, was seeking to hinder or delay, and thus to evade.

The three assignments of error first urged refer to certain issues of fact as having been disposed of by the special findings of the jury contrary to the evidence, or in a confused and contradictory manner. We have treated these issues of fact as if the jury had solved them in favor of the appellants, and have disposed of the case accordingly. Hence the assignments are regarded as immaterial.

The judgment is in all things affirmed.

*Affirmed.*

Writ of error refused.