### TEXAS LUMBER & LOAN CO. v. FIRST NAT. BANK OF ROSEBUD et al. (No. 6011.)

(Court of Civil Appeals of Texas. Austin. Feb. 12, 1919. Rehearing Denied March 19, 1919.)

1. HUSBAND AND WIFE ☞257—COMMUNITY PROPERTY—RENTS FROM WIFE'S SEPARATE ESTATE—STATUTES.

Under Married Woman's Act, amending Rev. St. arts. 4621, 4622, 4624, and under article 4627, unamended, rents from the wife's separate estate continued to remain community property.

2. HUSBAND AND WIFE ☞269—COMMUNITY PROPERTY — RENTS FROM WIFE'S REALTY — COMMUNITY DEBT—STATUTES.

Under the Married Woman's Act, amending Rev. St. arts. 4621, 4622, 4624, and under article 4627, unamended, rents from a wife's separate real estate, though community property, are not subject to community debts, despite Acts 35th Leg. c. 194, amending article 4621, providing rents from wife's separate lands shall be her separate property.

3. APPEAL AND ERROR ☞994(3), 995—REVIEW—CREDIBILITY AND WEIGHT OF EVIDENCE—QUESTION FOR COURT.

The credibility of witnesses and the weight to be given the testimony were points for the decision of the trial court.

4. APPEAL AND ERROR ☞1010(1)—REVIEW—JUDGMENT—EVIDENCE.

Court of Civil Appeals will not disturb the judgment of the trial court if there is sufficient evidence in the record to support it.

5. HUSBAND AND WIFE ☞133(8)—SEPARATE PROPERTY OF WIFE—BANK DEPOSIT—SUFFICIENCY OF EVIDENCE.

In action to garnishee husband's bank deposit, wherein wife claimed deposit as her separate property, evidence consisting of husband's testimony *held* sufficient to show that the deposit was the separate property of the wife, consisting of the proceeds of her own lands.

Appeal from District Court, Falls County; W. A. Patrick, Judge.

Action by the Texas Lumber & Loan Company against F. A. Schuler, wherein plaintiff had judgment, and sued out writ of garnishment against the First National Bank of Rosebud, Mrs. Allie Schuler and F. A. Schuler intervening and claiming the bank deposit garnished. From judgment for Mrs. Schuler against plaintiff, plaintiff appeals. Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

E. M. Dodson, of Rosebud, and Spivey, Bartlett & Carter, of Marlin, for appellant.

Walton D. Taylor, of Waco, for appellees.

BRADY, J. Appellant sued out a writ of garnishment against appellee, bank, upon a judgment obtained by appellant against F. A. Schuler. The bank answered that it had on deposit in the name of Schuler certain money which was then due him by the bank, but that Mrs. Allie Schuler, his wife, claimed the money as her separate property; and Mrs. Schuler, joined by her husband, intervened in the suit and claimed the deposit as her separate property. The case was tried without a jury, and judgment rendered against appellant and in favor of Mrs. Schuler for the fund, from which judgment this appeal was taken.

The case was tried in part upon an agreed statement of facts, it being agreed by the parties that Mrs. Allie Schuler had, previous to her marriage to F. A. Schuler, inherited from her father a farm, and that a part of the land was rented to one Geo. McCulloch for the year 1916. It was further agreed that during the marriage, F. A. Schuler leased 20 acres of other land, with the privilege of purchasing the property at the expiration of a five-year lease, the lease contract being made about three years prior to this suit; that thereafter F. A. Schuler built a house thereon, and on January 1, 1915, executed to appellant his note for $2,500; that the house was afterwards destroyed by fire, and $2,500 collected from insurance paid on the note; and that the balance of the note and a bill for materials purchased by Schuler from appellant for the erection of a two-room house on the 20 acres represented the amount recovered by appellant in its judgment against F. A. Schuler.

It was also agreed that the debt for which the $2,500 note was given, and the debt represented by the account for materials were contracted by F. A. Schuler during the marriage, and that Mrs. Schuler knew of the creation of said debts at the time, and made no objection thereto, and that all the material for which the note was given and the account incurred was used by Schuler with the knowledge of his wife, and without objection by her, in making the improvements upon the 20 acres; that the rights and interest of Schuler and wife in the 20 acres were acquired during their marriage by onerous title, and was paid for out of rents collected therefrom.

F. A. Schuler was the only witness who testified on the trial, and, without undertaking to set out the details of his testimony, he testified to facts showing that the money in the hands of the garnishee and on deposit in his name was for rents received during the year 1916, from the tenant, Geo. Mc-Culloch, as rent on a part of the farm owned by Mrs. Schuler.

[1, 2] Under its first assignment of error, appellant makes the proposition that, appellant's debt against F. A. Schuler being a community debt, and the rent from his wife's separate real estate being community property, it was subject to garnishment, and judgment should have been rendered for appellant. On the other hand, appellees contend that rents from the wife's separate real estate are not liable for debts contracted by the husband, and that this is true whether the rents be regarded as separate or community property. The question presented requires a consideration, and involves the proper interpretation of chapter 32, General Laws of 1913, commonly known as the "Married Woman's Act" of the Thirty-Third Legislature. This statute amends articles 4621, 4622, and 4624, Revised Civil Statutes. As amended by this law, article 4621 provides that:

" * * * All property of the wife both real and personal, owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired shall be the separate property of the wife"

—and provides that the wife shall have the sole management, control, and disposition of her separate property, both real and personal, and that:

"Neither the separate property of the wife, nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings shall be *subject to the payment of debts contracted by the husband.*" (Italics ours.)

Article 4622 as amended provides that:

"All property acquired by either the husband or wife during marriage, except that which is the separate property of either one or the other shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only, provided, however, the personal earnings of the wife, the *rents from the wife's real estate,* the interest on bonds and notes belonging to her and dividends on stocks owned by her *shall be under the control, management and disposition of the wife alone,* subject to the provisions of article 4621," as amended.

Article 4624 as amended is as follows:

"Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payment of debts contracted by the wife, except those contracted for necessaries furnished her or her children; provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

Article 4627, Revised Civil Statutes, which was not amended by the act of the Thirty-

Third Legislature, and which was enacted in 1856, provides as follows: Community property of the husband and wife shall be liable for their debts contracted during marriage, except in such cases as are specially excepted by law.

Before the enactment of the act of 1913 it was the statutory law and the uniform course of decisions in this state that community property was liable for the debts of either husband or wife, except where otherwise provided by law; and it was the settled rule in this state that the rents from the wife's separate real estate were community property. We agree with appellant's counsel that there is nothing in the act of 1913 to indicate the legislative purpose to change this rule or to change the status of the latter class of property from community to the separate estate of the wife. It is our opinion that under the act of 1913 rents from the wife's separate real estate continued to remain community property. First Nat. Bank v. McWhorter, 179 S. W. 1147; Tannehill v. Tannehill, 171 S. W. 1050; Scott v. Scott, 170 S. W. 273; Emerson v. Brothers, 194 S. W. 608. But it does not follow from this conclusion that the rents from the wife's separate realty would become subject to liability for debts contracted by the husband, even where they are community debts. While article 4627 was not amended by the act of 1913, it will be observed that, although it provides that community property of the husband and wife shall be liable for their debts contracted during marriage, it contains the qualification, "except in such cases as are specially excepted by law." This statute simply means that the community estate shall be liable for the debts of either husband or wife contracted during marriage, except where the Legislature has seen fit to otherwise provide. Therefore the question is whether by the act of 1913 the Legislature has created an additional exception to those found in the Constitution and other laws of the state. Article 4621, as amended by that act, expressly provides:

"Neither the separate property of the wife, nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings shall be subject to the payment of debts contracted by the husband."

The language seems plain and unambiguous, and does not in terms limit this exemption to debts contracted by the husband for the benefit of his separate estate, or otherwise than for the benefit of the community estate. The language is that the exemption of the character of property described shall extend to all debts contracted by the husband. To limit its operation to only such debts contracted by the husband as were for the benefit of his separate estate or not connected with the community, and leave such property subject to debts contracted by the husband where they are community debts, as contended by appellant, would be to change, by judicial construction, the plain terms of the statute, which we have neither the inclination nor the power to do.

The language employed in this part of article 4621 bears intrinsic evidence of the legislative intent to exempt, not only the separate property of the wife from the payment of debts contracted by the husband, but also several kinds of community property, including rents from the wife's separate real estate. As to the latter, this was a distinct departure from the previous policy of the state, and was evidently intended to safeguard such property, as well as the separate real estate of the wife, and to preserve it free from liability for all debts contracted by the husband.

It is contended by appellant's counsel that it would be an anomaly to hold that rents from the wife's separate real estate are community property, yet not subject to community debts. We are unable to perceive that such would be the case, but, even if it were, the anomalous situation arises from the legislative policy as expressed in the statute, with which the courts are powerless to interfere. However, we will observe that while this statute in the particular we are discussing marks a distinct departure from the previous policy of the Legislature, it does not present an anomaly without precedent. The homestead may be community, and yet by the Constitution it is exempt from forced sale for community debts. The same is true of current wages for personal services, the earnings of either the husband or the wife, which are community property, and yet are expressly exempted by statute from forced sale for all debts, whether community or not. The same situation exists as to all community property which by statute is exempt from forced sale. These are all but exceptions to the general provision in article 4627 that community property is liable for community debts, and the statute we are considering simply adds another exception to that rule.

Our conclusion is supported by the decision of the Court of Civil Appeals for the Seventh District, in the case of Emerson v. Brothers, 194 S. W. 608. It was there held that rents from a farm owned by the wife, while still community property under the act of 1913, were exempt from the payment of debts contracted by the husband, by virtue of the amendment to article 4621 by that act. The facts in that case were stronger for appellant's position than in the instant case, because only a part of the purchase money of an automobile, claimed by the wife as her separate property and levied upon under a judgment against the husband was paid out of separate funds of the wife; and it also

appeared that the wife had borrowed from a bank the greater part of the money to pay for the car, upon a note executed by her husband and herself, and had repaid the note out of the proceeds of another car owned by her, and rents from her farm. It is not necessary for us to go that far in this case, as the entire fund reached by garnishment in this case was, at the time the writ was served, the proceeds of crops raised on the wife's farm, and constituted rents from her separate real estate.

Appellant cites the case of Bank v. McWhorter, 179 S. W. 1147. While the exact question does not seem to have been discussed in the opinion in that case, it appears that the trial court peremptorily instructed a verdict for plaintiffs, 'on the ground that the proof showed that the property attached, upon a judgment against the husband, was the separate property of the wife, and not liable for his debts; and the Court of Civil Appeals held that the peremptory instruction should not have been given. While the discussion in the opinion seems to be confined to the question whether crops raised upon the wife's farm became her separate property or remained community property under the act of 1913, and the further question whether the husband's half interest in the property had passed to the wife by gift, the appellate court seems to have not only regarded the property as still community, but that it might be liable for the husband's debts. But be that as it may, the same court in a later opinion, Emerson v. Brothers, supra, held that, nothwithstanding rents from the wife's realty remained community property even after the passage of the act of 1913, such property was not subject to seizure and sale under a judgment against the husband.

Appellant's counsel further argue that, as showing that the Legislature did not intend by the act of 1913 to exempt rents from the wife's separate real estate from the payment of community debts, the Legislature in 1917, by chapter 194, Acts 35th Leg. p. 436, provided for the first time that the rents and revenues from the wife's separate lands shall be the separate estate of the wife, and that this is a legislative construction that the Legislature did not theretofore intend to exempt such property from liability for community debts. We are unable to agree to this contention. First, it may be said that the act of 1913 was unambiguous, and needs no interpretation, and therefore cannot be aided or its meaning determined by a subsequent legislative construction. But if we were free to resort to the act of 1917 in aid of the proper construction of the provision in the act of 1913, which we are considering, we see nothing in the later act to support appellant's position. The act of 1917, in this respect, did nothing more than change the status of rents from the wife's real estate from that of community property to her separate property.

Appellant's counsel insist that if the act of 1913 exempted the rents of the wife's real estate from the payment of debts contracted by the husband, as agent and representative of the community, and as he alone could contract such debts, there could be no reason for Legislature in 1917 to change the status of such property from community to separate estate, except to exempt the same from community debts from that time on, thus recognizing that it did not enjoy such exemption under the act of 1913. To this suggestion we cannot assent, because there is nothing in the act of 1917 to support it. The prime purpose of the amendment of article 4621 by the act of 1917 was to provide for the management and disposition of the wife's separate property in cases of abandonment by the husband and in cases where he becomes insane, as shown by the emergency clause. We do not know what consideration induced the Legislature to change the status of the rents and revenues from the wife's land from community to separate property, but it is just as easy to impute to the Legislature the intention to definitely settle any controversy or difference of opinion that might have arisen among lawyers, or even in the courts, as to the proper construction of the former amendment to article 4621, which relieved such property from liability for debts contracted by the husband.

It is also to be observed that the change made in 1917 in this respect accomplished more than relieving rents from the wife's separate land from liability for payment of debts contracted by the husband, whether community or not. By the change of the status from community to the separate estate of the wife, it materially affected rights under the laws of descent and distribution, and this may have been the controlling purpose in the enactment. At all events, we see no reason to attribute to the Legislature the intention suggested in appellant's brief, certainly as against the plain language of the act of 1913.

[3, 4] Appellant's second assignment of error is to the effect that the legal evidence before the court was wholly insufficient to support the judgment, because the fund in the garnishee bank was deposited in the name of the husband, F. A. Schuler, and there was not sufficient evidence before the court to overcome the presumption created by statute that the fund in the garnishee's hands was the separate property of F. A. Schuler and liable for his debts. The question whether the evidence was sufficient to overcome this presumption was a question of fact for the trial court to determine. The credibility of the witness Schuler and the weight to be given to his testimony it was the exclu-

sive province of the trial court to decide; and we will not disturb the judgment of the court, if there is in the record sufficient evidence to support it.

[5] We do not think it necessary to state the details of Schuler's testimony, but we have examined the statement of facts, and find that he testified to facts which substantially show that the fund in the hands of the bank at the time the garnishment writ was served was from rents from the farm of Mrs. Schuler, and was her separate property. He testified that at one time the deposit included some wood money and some cotton picking money, but he also testified that at the time the garnishment was served, the wood money had all been checked out, except a few cents; and, as to the cotton picking money, it was advanced to the tenant, McCulloch, out of money placed in the bank, as the proceeds from cotton raised on his wife's farm worked by McCulloch, and that this money had been returned and deposited in such fund from the crops raised on the farm. While there may be some apparent contradictions in Schuler's testimony, it was sufficient, in our opinion, to show that the deposit garnished was in fact the separate property of Mrs. Schuler, and, in deference to the trial court's judgment, we find this to be a fact.

We believe both assignments should be overruled, and, finding no reversible error in the record, the judgment is affirmed.

Affirmed.