BAXTER & SWINFORD, INC. and Jeris Womack, Appellants,

v.

Suzanne Pasztor MERCIER, Carl B. Crites and Wife, Frances Crites, Appellees.

No. 01–83–0211–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 31, 1984.

---

St. John Garwood, Jr., Thomas E. Edmondson, Garwood, Edmondson & Hale, William B. Allison, Sewell & Riggs, Houston, for appellants.

Ralph Hutmacher, Sheryl B. Johnson, Bousquet & Johnson, Houston, for appellees.

Before LEVY, WARREN and DOYLE, JJ.

## OPINION

LEVY, Justice.

Appeal is taken from a judgment in a nonjury trial awarding damages to the seller for breach of an earnest money contract against both the buyers and their brokers. We affirm the judgment as to the buyers, and reverse and render judgment that the seller take nothing as against the appellants, brokers for the buyers.

Carl and Frances Crites, as buyers, contracted to purchase the home of Suzanne Mercier, at 5702 Jason in Houston, Texas, and contemporaneously deposited $4,000 earnest money with the U.S. Life Title Company of Houston, as escrow agent. The real estate brokers representing both the seller (Mary Look with the firm of Jim West & Co.) and the buyers (Jeris Womack, with Baxter & Swinford, Inc.) likewise signed the earnest money contract as such brokers.

Claiming misrepresentation, particularly as to the sprinkler system and draperies, the Crites refused to close the sale and subsequently sued Mercier and U.S. Life for return of their earnest money, attorney's fees, and exemplary damages. In reply, Mercier counter-sued the Crites, U.S. Life, Jeris Womack, and Baxter & Swinford, alleging that the Crites and Womack had trespassed on her property, wrongfully entered her house, exterminated and painted the interior, left the curtains in disarray, and, all without her permission, allowed a sprinkler company to enter upon her land and place stakes in the ground for a new sprinkler system.

After tendering the $4,000 into the registry of the court, U.S. Life was discharged with a $500 allowance for its stakeholder's fees. The trial court awarded judgment in favor of Mercier and against the Crites, Womack, and Baxter & Swinford, jointly and severally, for not only the $4,000 earnest money, but also $4,000 attorney's fees, less the $3,500 remaining on deposit in the registry of the court. Womack and Baxter & Swinford, not joined herein by the Crites, have appealed from the trial court's judgment and raise four points of error.

In three points of error, appellants argue that, based on the trial court's thirty findings of fact and thirteen conclusions of law, the earnest money contract itself, and the evidence adduced at trial, there is no basis for holding them liable as brokers for the breach by others of a contract, or for other parties' wrongful acts—in which they in no way participated. We agree.

In his findings of fact, the trial judge found that the appellants had not encouraged or even suggested to the buyers that they refuse to close, and that such decision was made by the buyers entirely on their own. Moreover, the trial judge found that the appellants had never trespassed on the property at any time, and that Mercier did not sustain any damage from the allegedly unauthorized entry onto her premises by anyone during the pendency of the sale.

In his conclusions of law, the trial judge determined that the only reason the Crites were liable to Mercier was their refusal to close on the house, that the appellants were not liable for the buyers' refusal to close, and that the appellants had breached no duty of their own, but were liable to Mercier because their names were on the contract.

The earnest money contract is on a form printed by the Houston Board of Realtors. It provides for commissions to be paid as between the listing broker and the selling broker (or "co-broker"), that the commission be reduced by one-half if the buyer defaults, but states nothing about the brokers' duties. In holding the appellants liable, the trial court held that only the brokers representing the buyers were jointly and severally liable for the buyers' breach of the earnest money contract, thereby in effect transforming them functionally into guarantors of the buyers' performance under the contract. Generally, a real estate broker is engaged in the business of merely procuring purchases or sales of land for third persons for a commission contingent

upon success, *Dallas Joint Stock Land Bank v. Colbert,* 127 S.W.2d 1004, 1009 (Tex.Civ.App.1939, rev'd on other grounds, 136 Tex. 268, 150 S.W.2d 771 (1941), *not* in guaranteeing payment in the event of default by the buyer.

■ The earnest money contract in question does not evidence any intent or commitment on the brokers' part to indemnify the sellers upon default by the Crites, nor in fact does the contract require the brokers to do *anything. Taylor v. First State Bank,* 178 S.W. 35, 37 (Tex.Civ.App.—Fort Worth 1915, no writ). So long as the broker's principal is disclosed, the broker who acts within the scope of his authority generally has no liability for his principal's breach of a typical real estate sales contract—absent an agreement that he has incurred such responsibility. *Synatzske v. Gorham,* 211 S.W.2d 391, 392 (Tex.Civ. App.—Austin 1948, no writ), *Harkrider v. Capps,* 250 S.W. 1093, 1094 (Tex.Civ.App. —San Antonio 1923, writ dism'd), *White v. Rutherford,* 148 S.W. 598 (Tex.Civ.App.— Texarkana 1912, no writ).

■ Nothing in the record even remotely suggests an agreement by the brokers to assume such responsibility. Neither does appellee cite us to any authority supporting the proposition that a broker can be held liable for the buyers' default simply because his signature is on the earnest money contract.

■ Because we hold that appellants are not liable under the earnest money contract, it follows that they are not liable for attorney's fees which the contract provides are the obligation of the non-prevailing party in any legal proceeding brought under said contract.

■ We are also of the opinion that the trial court's findings, amply supported by the evidence, show that the appellants did not themselves trespass, nor was there any resulting damage from any trespass committed by any other individual, on Mercier's property. As compensation for injury to real property is generally limited to the extent of the proven damages to the property, *Whitehead v. Zeiller,* 265 S.W.2d 689 (Tex.Civ.App.—Fort Worth 1954, no writ), we hold that the trial court's findings effectively nullify any claim for trespass damages against the appellants.

Accordingly, we sustain appellant's first three points of error.

■ In their fourth point, appellants urge that the trial court erred in directing that any future litigation arising out of the parties' disputes be filed only in the 151st District Court of Harris County, Texas, which heard the instant case, citing us to cases that concern the restricting of venue by agreement. It is almost a platitude that a citizen is entitled to the protections which the law affords him, including the venue right to be sued at the place determined by the general law. *Fidelity Union Life Insurance Company v. Evans,* 477 S.W.2d 535 (Tex.1972). It appears rather clearly that all parties are residents of Harris County, and that the contract was negotiated, executed, and to be fully performed in Harris County. We understand the trial court's intent to ensure efficient judicial administration by requiring the parties to litigate their disputes in the one court that is well acquainted with the parties, the evidence, and the issues, but under art. 199(11), Tex.Rev.Civ.Stat.Ann. (Vernon 1969), the District Clerk is required to file new suits in the order in which the petitions are presented, and assign them to the various courts in rotation, so as to distribute the load randomly and equally. No provision exists to determine which court is assigned a case in advance of filing, as this would defeat the legislative purpose to ensure a random distribution. We therefore sustain the appellant's fourth point of error, and order that the court's requirement that future suits be filed only in the 151st Judicial District Court of Harris County, Texas, be expunged and deleted.

The judgment of the trial court is reversed as to the appellants, and rendered that the appellee Mercier take nothing as against them, but in all other respects the judgment is affirmed, except that that por-

tion of the judgment requiring the parties to restrict the filing of future suits only in the 151st Judicial District Court of Harris County is reversed and ordered deleted.